258 Wis. 505 (1951)
MONDOVI CO-OPERATIVE EQUITY ASSOCIATION, Respondent,
vs.
THE STATE, Appellant.[*]
Supreme Court of Wisconsin.
February 5, 1951.
March 6, 1951.
*506 For the appellant there was a brief by the Attorney General and Harold H. Persons, assistant attorney general, and oral argument by Mr. Persons.
For the respondent the cause was submitted on the brief of Murphy, Armstrong & Gavin of Madison.
FRITZ, C. J.
On this appeal it suffices to note that,in addition to other matters established by the evidence and found by the trial court as basis for plaintiff's recovery of the judgment under review,the following facts alleged in plaintiff's complaint were established beyond dispute, to wit: That the tax was not levied upon any sales of solely motor fuel, but was based upon the sale, during the period covered by *507 said audit, of some kerosene, range oil, distillage, fuel oil, and similar low-grade petroleum products not suitable for motor fuel and not taxable under the Wisconsin statutes. According to the auditor who made the audit in question, the levy of the additional tax was made pursuant to a rule promulgated by the Wisconsin department of taxation or its commissioner. That rule provided that any shortage or shrinkage in kerosene, range oil, distillage, fuel oil, and similar low-grade petroleum products over and above one per cent of the amount purchased shall be deemed to have been blended with motor fuel and sold as motor fuel when delivered by a tank truck with two or more compartments, with a single pump and meter, where both motor fuel and nontaxable petroleum products are carried for delivery on the same truck. Plaintiff alleges that said rule was promulgated and issued in July, 1947, and was to be applied in all audits made thereafter, but audits made prior to said time would not be reopened or reaudited.
In its answer to plaintiff's complaint defendant alleged and relied on evidence upon which it claimed that the tax so assessed, levied, and collected was determined by the motor fuel division of the Wisconsin department of taxation upon its estimate of the correct amount of taxable motor-fuel receipts or distributions of the plaintiff during the period covered by said audit, based upon the information available to the Wisconsin department of taxation as to the type of equipment of the plaintiff, its methods of use of the same, and the operations of the plaintiff during said period; and that said audit and the estimate of the correct amount of taxable motor-fuel receipts or distributions of the plaintiff during the period covered by said audit were made and based upon facts and information obtained by and available to the Wisconsin department of taxation and to the type of equipment of the plaintiff, its methods of use thereof, and the operations of the plaintiff, during said period; and defendant *508 denied that its audit and estimate of the correct amount of taxable motor-fuel receipts or distributions of the plaintiff during the period covered by said audit were made pursuant to or based upon any rule or regulation of the Wisconsin department of taxation or of the commissioner of taxation.
As the learned circuit court judge stated in his findings of fact: On November 18, 1946, Dwight W. Mack, as director of the motor fuel tax division of the Wisconsin department of taxation sent a letter to all the field auditors of the motor fuel tax division in which he stated:
"I am inclosing for you a sample sheet of recommended invoice forms. I shall appreciate your checking invoices on your audits to see that they comply, and whenever you can advise dealers that their invoices must have substantially the information shown on the sample.
"Also you will find inclosed a sketch of the results of using one pump on a compartment truck which is used alternately to dispense Class 1 and Class 2 fuels. This is one of many tests which was made and is very representative. We have discussed the matter of tax on Class 2 fuels which show an excess shortage because of the flush being put into the taxable products. In your audits you are directed to collect the tax on Class 2 fuels, which have an excess of one per cent shortage, on that part of it which is in excess of one per cent. This applies where you have sufficient evidence that the dealer is following the procedure set forth in this sketch.
 "Yours very truly,
 "Wisconsin Department of Taxation
 "Motor Fuel Tax Division
 "Dwight W. Mack, Director."
Thus the field auditors were instructed to assess the excess of over one per cent of shortage in Class 2 fuels as taxable motor fuel wherever a shortage existed in future audits and to collect a tax and a penalty on the same. And the court further stated in its findings of fact:
"That all wholesalers of motor fuel are audited periodically by the motor fuel tax division and that after said date *509 the field auditors of the motor fuel tax division followed the instructions contained in said letter whenever making a field audit. . . .
"That the instructions issued by the director of the motor fuel tax division of the Wisconsin department of taxation on November 18, 1946, were not incorporated in any rule or regulation filed in the office of the secretary of state of the state of Wisconsin or published by the Wisconsin department of taxation as a rule of said department."
The court stated in its conclusions of law:
"That ch. 78 of the Wisconsin statutes grants no authority to the Wisconsin department of taxation or to the director of the motor fuel tax division thereof to establish a limit on losses on Class 2 motor fuel and that the attempt to do so is void and the levy of the tax based thereon is void.
"That . . . the instruction of the director of the motor fuel tax division as to the allowance of shortages and the levy and collection of tax and penalty did not become a rule under ch. 227 of the Wisconsin statutes and is void for that reason."
And in ordering judgment for plaintiff, the court stated that one of the reasons was,
"Because the director of the motor fuel tax division is not authorized by statute to make any such rule. The Motor Fuel Tax Law is contained in ch. 78. The legislature has seen fit to allow a two and one-half per cent deduction on sales of gasoline to cover evaporation, shrinkage, and unaccounted for losses. There is no authority in this chapter for anyone to fix a limitation on shortages of Class 2 fuel. In my opinion, sec. 78.06 (2) which is entitled, `False reports, tax estimates, penalties' does not cover this case. The plaintiff filed its reports with the tax department in good faith and no claim is made that they acted fraudulently in this respect."
No action to assess the plaintiff for any part of shortages disclosed by the prior audits, covering the periods from June, 1941, to July, 1942, and August, 1942, to May 5, 1945, has ever been taken. Six months after the completion of that *510 second audit, Dwight W. Mack, as director of the motor fuel tax division, on November 18, 1946, penned his directive to motor-fuel tax auditors in which he stated:
"In your audits you are directed to collect the tax on Class 2 fuels, which have an excess of one per cent shortage, on that part of it which is in excess of one per cent."
This one per cent formula was apparently arrived at within the tax department without notice of any kind being given to wholesalers to whom it would apply; and there was no public hearing to give them an opportunity to comment on its fairness or unfairness. It was circulated to motor-fuel tax auditors by Dwight W. Mack's letter dated November 18, 1946. But it was not filed with the secretary of state nor published with the rules and regulations of the tax department. Moreover, in respect to the plaintiff association, the formula announced in that letter was applied to it retroactively back to May, 1945, for a period of seventeen months before the "directive" was issued. Dwight W. Mack testified:
"We have set no uniform date only so far as we go back to the last audit. The plan we intend to follow depends on what we find. Assuming a company had not been audited since May 1, 1943, and one of our men audits the company and finds a loss of over one per cent, whether we are going back and audit prior to May 1, 1943, depends on the circumstances."
His directive of November 18, 1946, was apparently supplemented on December 2, 1946, by oral instructions to motor-fuel auditors that they were instructed to apply the formula "to shortages discovered in our audits as we made them from that day on."
The trial court was also of the opinion that because "the testimony shows that some audits had just been completed when this directive was received, while others had not been *511 completed for over two years," and that "all motor-fuel dealers are not audited at the same time," the formula prescribed by the directive does not apply to them uniformly and therefore it violates the uniformity provision of sec. 1, art. VIII, Const. The trial court's conclusion that Dwight W. Mack's directive of November 18, 1946, did not become an effective rule under ch. 227, Stats., must be sustained. Sec. 227.01 provides that for the purposes of ch. 227, Stats.,
"(2) `Rule' means a rule, regulation, standard, or statement of policy of general application, including the amendment or repeal thereof, issued by an agency to implement, interpret, or make specific the legislation enforced or administered by it, or governing its organization and procedure, but it does not include regulations concerning internal management of the agency not affecting private rights or interests."
In ch. 78, Stats.,Motor Fuel Tax Law,the rule-making power is delegated to the state department of taxation by sec. 78.24, Stats., which among other matters authorizes the "department . . . to promulgate such reasonable rules and regulations relating to the administration and enforcement of the provisions of this chapter as may be deemed expedient, and such rules and regulations to govern its proceedings and to regulate the mode and manner of all investigations and hearings." Under the provisions in sec. 78.13, Stats., the audit of the records of the plaintiff in this case was an "investigation" within the meaning of said provisions; and the purported directive promulgated on November 18, 1946, by Dwight W. Mack as director of the Wisconsin department of taxation, motor vehicle department, was an attempted regulation applicable to such an investigation. It was evidently intended to be a statement of general application to all wholesalers using multicompartment trucks with *512 single pumps and hose. However, in order to become an effective regulation there had to be due compliance with the provisions which are applicable to the various boards, commissions, officers, and agencies, etc., stated in sec. 227.01, Stats., that are authorized by provisions in ch. 227, Stats., to exercise rule-making powers. Thus it is provided in sec. 227.03, Stats., that,
"Each agency shall file forthwith in the office of the secretary of state a certified copy of every rule adopted by it, including all rules now in effect. The secretary of state shall keep a permanent register of all such rules. Except as otherwise provided by statute, all rules hereafter adopted shall become effective upon such filing, unless a later date is specifically stated therein. . . ."
Because of the absence of due compliance with those provisions by reason of the failure of the department of taxation to duly file in the office of the secretary of state the regulation promulgated by Dwight W. Mack, the directive was an invalid and futile attempt at the rule-making power under sec. 78.24, Stats. The provisions in secs. 227.01 to 227.03, Stats., are part of the model law promulgated by the National Conference of Commissioners on Uniform State Laws, and the committee that prepared the act for the commissioners stated:
". . . there are certain basic principles of common sense, justice, and fairness that can and should prevail everywhere. The proposed act incorporates these principles, with only enough elaboration of detail to support the essential major features. These principles are: (1) Assurance of proper publicity for administrative rules that affect the public; . . ." (1943 Handbook of the National Conference of Commissioners on Uniform State Laws, p. 228.)
As stated in McCann v. Personnel Board, 255 Wis. 321, 324, 38 N. W. (2d) 480:
". . . the rules adopted do not become effective until filed. It is considered that the rule followed by the trial court did *513 not become effective until filed in the office of the secretary of state. It was, therefore, error to apply that rule."
By the Court.Judgment affirmed.
MARTIN and BROADFOOT, JJ., took no part.
NOTES
[*] Motion for rehearing denied, without costs, on May 8, 1951.