STATE EX REL. DEMOCRAT PRINTING COMPANY, Appellant, v. SCHMIEGE, Director, Bureau of Purchases and Services, Department of Administration, State of Wisconsin, Respondent.

*November 26, 1962—January 8, 1963.*

328

For the appellant there were briefs by *Murphy, Stolper & Desmond* and *E. L. Wingert,* attorneys, and *George W. Crownhart* of counsel, all of Madison, and oral argument by *Mr. Wingert* and *Mr. Robert B. L. Murphy.*

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

HALLOWS, J.   The underlying issues on this appeal are whether the Director has the authority to reject the lowest bid in its class for state printing as being excessively high and, if so, how the Director's authority is to be exercised. Democrat contends the Director has no such authority because the constitution and the statutes of the state mandatorily require the acceptance of the lowest bid for state printing and if the Director has the power to reject the lowest bid, such power may be exercised only after notice, hearing, and opportunity to the bidder to present evidence the bid was not excessive.   The Director contends he has such power by virtue of sec. 16.75, Stats., the sole bid is not necessarily the lowest bid, aside from the statute he has the power to reject bids, it has been the administrative practice to reject any and all bids, and the reservation of the right to reject constituted a rule within the meaning of sec. 35.03 (5), or a specification established under sec. 35.43 (1).   The determination of the issues requires a construction of sec. 25, art. IV, Const., ch. 35, Stats., and sec. 16.75.

At the outset we have no difficulty in deciding Democrat's sole bids for classes 3 and 4 were the lowest bids.   But it does not follow necessarily that because they were the only bids, they were the lowest.   Academically, it could be argued that being the only bids in their classes they were the highest bid.   Sec. 25, art. IV, Const.,[1] declares the legislature shall

---

[1] "STATIONERY AND PRINTING. *Section 25.* The legislature shall provide by law that all stationery required for the use of the state, and all printing authorized and required by them to be done for their use, or for the state, shall be let by contract to the lowest bidder, but the legislature may establish a maximum price; no member of the legislature or other state officer shall be interested, either directly or indirectly, in any such contract."

provide by law that state printing shall be let by contract to the lowest bidder. The term "lowest bidder" implies the existence of competition or at least a fair opportunity for competition. When either of such conditions exists, the only or sole bid is the lowest bid. In the absence of such a construction a sole bid would be required to be rejected and in cases when more than one bidder is unwilling to bid an impasse would exist. In the case at bar, the statutory procedure for public bidding was open to all printers. As long as a fair opportunity for competition existed, the fact that only one printer bid on these two classes makes such bid the lowest bid although not the lowest bid by a comparison which cannot be made. This view is supported by *Hager v. Melton* (1909), 66 W. Va. 62, 66 S. E. 13, and 10 McQuillin, Mun. Corp. (3d ed.), p. 359, sec. 29.74. We reject the reasoning of *Vincent v. Ellis* (1902), 116 Iowa 609, 88 N. W. 836, and *People ex rel. Carlin v. Supervisors* (1887), 49 N. Y. (42 Hun) 456, indicating there must be two or more bids before there can be a lowest bid.

The construction we give to the constitution is in accordance with the administrative practice as evidenced by the Director's accepting two bids of other bidders which were the only bids in their classes. This was done at the time the Director rejected the bids which are the subject matter of this suit. The Director's contention the bid must be a reasonable and fair price to be the lowest bid has no merit. This argument is a way of saying the sole bid might not be the lowest bid if there had been other bidders or if there were another opportunity for bidders to bid. A bid once made in the face of a fair opportunity for competition is the lowest bid, even though the sole bid and excessive as to price. Its rejection must be justified on other grounds than it is not the lowest bid.

The adoption of sec. 25, art. IV, Const., was the end result of much controversy in the constitutional conventions.[2] Its adoption settled that a state printer would not be elected as was the prior custom and that state printing would be open to bidders by contract. To prevent political abuses and to secure the cheapest price for state printing, sec. 25, art. IV, provided that the legislature should by law provide all state printing be let by contract to the lowest bidder with power in the legislature to establish a maximum price and prohibited any state officer or member of the legislature from being interested in any such contract. This article is not self-executing and requires implementation by the legislature.

For many years and until 1955 the legislature established maximum prices. In that year the legislature established the base-price method as a basis for bidding for public printing (ch. 50, sec. 4, Laws of 1955). In 1959 the Director was given authority to specify base prices to which all printing bids are to be related in terms of discounts or additions (ch. 516, Laws of 1959). In 1955 the legislature also gave the Director the power to reject any or all bids for materials, supplies, equipment, and contractual services (ch. 592, Laws of 1955). Whether this power applies to printing is an issue in this case.

---

[2] Milo M. Quaife, "The Attainment of Statehood," publications of the State Historical Society of Wisconsin, Collections, Vol. XXIX, Constitutional Series, Volume IV (1928).

Wisconsin Legislative Council, Staff Report, Constitutional and Administrative History of State Printing, publication No. 59–13, August 21, 1958.

State Printing, Analysis of Memorandum Filed on Behalf of the Printing Industry, by Staff of the Subcommittee on State Publications of the Interim State Government Operations Committee, May 8, 1959.

Provisions of State Constitutions Relating to Public Printing, 1846–1959, by Roy N. Lokken, Research Staff, Legislative Council.

See also note, 1951 Wisconsin Law Review, 556.

In implementing the constitution, the legislature enacted ch. 35, Stats., relating to state printing and ch. 16, Stats., relating to the department of administration. Both sections have been amended many times. Currently sec. 35.47, Stats., provides such bids for printing shall be accepted as the Director determines are proposals to do any of the first four classes of printing for the greatest percentage of discount from or at the least percent above the base price, and sec. 16.75 (7) provides printing shall be purchased from the lowest responsible bidder without regard to the amount of the purchase. While Democrat argues this language is categorical, requiring the acceptance of the lowest bid and implies no discretionary authority on the part of the Director, such sections must be read with sec. 16.75 (1).[3] This section provides, in part, that all materials, supplies, equipment, and contractual services except as otherwise provided in subs. (3) and (7) when the estimated cost exceeds $3,000 shall be purchased from the lowest responsible bidder and any or all bids may be rejected. The words "contractual services" are defined in sec. 16.70 (4) as including printing. Sub. (7) of sec. 16.75 must be read in

---

[3] Sec. 16.75. "BUY ON LOW BID, EXCEPTIONS. (1) All materials, supplies, equipment, and contractual services except as otherwise provided in subs. (3) and (7), when the estimated cost exceeds $3,000, shall be purchased from the lowest responsible bidder. All orders awarded or contracts made by the department of administration shall be awarded to the lowest responsible bidder, taking into consideration the location of the institution or agency, the qualities of the articles to be supplied, their conformity with the specifications, the purposes for which they are required, and the date of delivery, but preference shall always be given to materials, supplies, and provisions of Wisconsin producers, distributors, suppliers, and retailers. Bids shall be received only in accordance with such standard specifications as may be adopted by the department of administration in the manner provided in this subsection. Any or all bids may be rejected. . . .

"(7) Stationery and printing shall be purchased from the lowest responsible bidder without regard to the amount of the purchase, except when the department of administration exercises the discretion vested in it by sec. 16.82 (4)."

connection with sub. (1) of that section. When so read, sub. (7) qualifies the implication that contractual services need not be purchased from the lowest responsible bidder when the estimated cost is less than $3,000 because sub. (7) expressly provides printing shall be purchased from the lowest bidder without regard to the amount of the purchase. Prior to 1951, the requirement that printing be by purchase from the lowest bidder in all cases appeared in sub. (1) of sec. 15.60 as an exception. Neither the change in the language nor the creation of sub. (7) indicates any intent of the legislature to remove printing entirely from the scope of sec. 16.75 (1). The legislative history of the section is quite the other way. It would be inconsistent to define "contractual services" as including printing and then to exclude printing entirely from the section by a limited exception. We hold that the language "any or all bids may be rejected" in sec. 16.75 (1) applies to state printing.

There is some indication in the briefs, relying on an attorney general's opinion (23 Op. Atty. Gen. (1934), 550), that the Director prior to 1955 and since 1934 has been exercising the right to reject any or all printing bids. There is no basis for the grant of such power in the statute prior to the amendment of sec. 16.75 (1), Stats., and especially as applied to state printing, nor can we agree with the Director that he had such power in the absence of statute. The statements in 43 Am. Jur. Public Works and Contracts, p. 788, sec. 45, 10 McQuillin, Mun. Corp. (3d ed.), pp. 361–363, sec. 29.77, and 31 A. L. R. (2d) 457, 475, are not in point as they refer to statutory authority. Neither do we find the opinion of the attorney general (23 Op. Atty. Gen. (1934), 550) to be helpful. Other attorney general opinions (23 Op. Atty. Gen. (1934), 713, and 32 Op. Atty. Gen. (1943), 95) are to the contrary. The record does not disclose a long-established administrative practice which this court may take into consideration in construing a statute.

Democrat vigorously contends the construction of sec. 16.75, Stats., which permits a director to reject Democrat's bid, violates sec. 25, art. IV, Const. The gist of this argument is the Director's power to reject is in effect the exercise of the legislature's power to fix maximum prices which cannot be delegated by implication. *Fish Creek Park Co. v. Bayside* (1957), 274 Wis. 533, 80 N. W. (2d) 437. The power to reject any or all bids on the ground the sole bid is excessively high does not constitute the establishment of a maximum price as contemplated by the constitution or a delegation of that power by the legislature. It is not claimed the power to establish base prices is the establishment of maximum prices and, in fact, it is not. If it were feasible for the legislature to fix maximum prices for state printing, it could still do so. We consider the legislature has the power to grant the Director the authority to reject any or all bids. The constitution in granting the legislature the power to fix maximum prices did not by implication limit the power of the legislature. The rule of statutory construction *expressio unius est exclusio alterius* has no application to constitutional interpretation when the result will be to limit the plenary power of the legislature by implication. *Ferguson v. Kenosha* (1958), 5 Wis. (2d) 556, 93 N. W. (2d) 460; *State ex rel. McCormack v. Foley,* ante, p. 274, 118 N. W. (2d) 211.

The purpose of the constitutional provision is not offended by the granting of the statutory power to the Director to reject any or all bids. Besides the prevention of political favoritism and extravagance in the letting of printing contracts, the mandatory competitive-bidding method was to secure the cheapest price for the state. Such purpose is safeguarded by the power to reject bids. The constitutional provision means the lowest bidder by contract must be accepted as distinguished from any other bidder, but we cannot find a latent meaning in the constitution that the lowest bidder regardless of any and all

conditions must be accepted. No attack is made on ch. 35, Stats., which provides for the rejection of printing bids in three specific instances.[4] Democrat concedes in its brief the state has the power to protect itself from exorbitant prices in addition to relying upon competitive economic forces of the market place. It points out an excessive bid, which is in fact constructively fraudulent and an unjust enrichment of the printer, could be rejected as not a *bona fide* bid. Likewise, a bid which is outside the realm of reason resulting in a gross inadequacy of consideration, would warrant judicial refusal to compel the making of the contract or to enforce one, if made. It is also argued the Director may within his power withhold work or shift work from one class to another under sec. 35.03 (4). These arguments may be valid but it does not follow that the Director under sec. 16.75 does not have the power to reject any or all bids.

This power, as applied to printing, is more narrow in scope than when applied to other material or contractual services because of the specific provisions contained in ch. 35, Stats. Whatever the scope of this power as applied to state printing, it includes the right to reject all bids on the ground they are excessively high. This construction is not a violation of the constitutional provision. This provision in the constitution means if any bid is accepted it must be the lowest bid. When the Director determines the lowest bid is excessively high, all bids should be rejected and the procedure for letting the printing out to public bids should be repeated. Only in this way can a state be protected from excessively high bids and the cheapest price for printing be obtained. This is in keeping with the purpose of the constitution.

---

[4] Sec. 35.47, Stats. (bid made pursuant to a contract in restraint of trade). Sec. 35.48, Stats. (bid not made according to specifications or secured). Sec. 35.51, Stats. (bid for which the bidder fails to execute a contract with security).

The Director contends that even if he did not have the power to reject any or all bids, Democrat cannot raise the question of the existence of such power because the form on which Democrat submitted its bid reserved to the Director the right to reject, and also the right was reserved in the booklet on state printing relating to base prices and specifications. This is a dangerous doctrine of the existence of administrative power by estoppel and one which we cannot accept. If the Director did not have the power by statute, he cannot acquire it by estoppel or waiver. We cannot find estoppel because Democrat had no right to bid on any other terms than those laid down by the Director. If Democrat varied those terms, it ran the risk of the Director's disqualifying the bid—a risk which a bidder ought not be required to assume in order to raise the question of the Director's power. When a bidder is an interested party and directly involved, he has a right to question and to have judicially determined the existence of the power of the state agency or of the state officer claiming the power. The lowest bidder does not achieve that status as a matter of grace but of right.

We agree with the trial court the Director's right to reject any or all bids cannot be the basis of a rule made by the Director under the authority of sec. 35.03 (5), Stats., because it does not comply with sec. 227.01 (5) (k). Ch. 227, Stats., is an important and controlling enactment of the legislature, and state agencies and officials must follow it in promulgating rules. As stated by the trial court, *Frankenthal v. Wisconsin R. E. Brokers' Board* (1958), 3 Wis. (2d) 249, 88 N. W. (2d) 352, 89 N. W. (2d) 825, did not open the door to the promiscuous adoption of the rules without compliance with ch. 227. Even if sec. 227.01 (5) (k) had been complied with, such power could not be thus created. Administrative rules do not create power but are made in the exercise of power. Neither does the insertion of the reservation to reject bids in the notice to bidders and

in the pamphlet entitled, "Wisconsin State Printing—Base Prices and Specifications," qualify as a specification as that term is used in sec. 35.43 (1).

The next question is the manner in which the authority of the Director to reject the lowest bid as excessively high is to be exercised. Democrat contends it may not be exercised without notice, hearing, and opportunity to present evidence that the bid was not excessive, relying on *Ianniello v. Harrison* (1926), 4 N. J. Misc. 111, 132 Atl. 78, *Sellitto v. Cedar Grove* (1945), 133 N. J. L. 41, 42 Atl. (2d) 383, and *Housing Authority of Opelousas v. Pittman Construction Co.* (5th Cir. 1959), 264 Fed. (2d) 695, 704. These cases deal with the issue of the responsibility of the lowest bidders under statutes requiring a contract be given to the lowest responsible bidder. We do not think the analogy to these cases is conclusive. The question of responsibility of the bidder is a question of fact and includes all the elements which enter into the successful performance of the contract. These facts generally lie outside the knowledge of the agency given the authority to accept or reject bids.

In the instant case, the power to reject is vested in the Director of the Bureau of Purchases and Services of the Department of Administration. It must be presumed that the Bureau of Purchases and Services and its Director have a working knowledge of fair and reasonable prices of state printing. Contracting for state printing is not an isolated or infrequent occurrence but is a repeated process every two years. There is no statutory authority granting a right to a hearing before the Director upon the issue of excessiveness of price. The excessiveness of price is a question of fact to be determined by the Director from evidence available to him. In the absence of statute, we will not add a requirement that the Director must hold a hearing before exercising his authority. However, in making such a determination, we think it would be good policy for the Director to·

have a hearing in order to better inform himself and to avoid a challenge of arbitrary action. The finding that a bid is excessively high must be based on reasons which will justify it—good faith or speculation is not enough.

Due process and fair play are satisfied by a judicial review of the Director's action. See *State ex rel. Wisconsin Inspection Bureau v. Whitman* (1928), 196 Wis. 472, 508, 220 N. W. (2d) 929. The power to reject any or all bids by an administrative official is not to be exercised free from judicial review. In the trial court, Democrat had an opportunity to put in evidence of the reasonableness of its bid and of the arbitrariness of the Director's action. No evidence was presented by Democrat other than that admitted by the pleadings and the stipulation. This was to the effect Democrat lost money on its previous contract for state printing for these classes. This may be so, but this evidence falls short of proving the bids submitted were fair and reasonable in a competitive market. There is insufficient evidence in the record to show the Director's determination was so clearly erroneous that it should be set aside.

The trial court found the Director acted in good faith in rejecting Democrat's bid and no attack is made on this finding. The record and briefs contain the results of the rebidding in these two classes of printing in justification of the Director's action. We consider the results of the rebidding immaterial on this issue. The question of good faith of the Director is to be determined by the evidence before him at the time of the rejection, not what happened later. Part of the results of the rebidding is likewise immaterial because class 3 was broken up into different categories and therefore a fair comparison of prices cannot be made. Consideration has been given to the other questions raised, but in view of what has been said it is not necessary to discuss them.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.

BROWN, C. J. (*dissenting*). Although there is much in the majority opinion with which I agree, with respectful regret I am unable to concur in the result by the majority achieved. It seems to me that my brethren have unduly complicated a question which is essentially quite simple.

When I look at the Wisconsin constitution I observe that it gave separate treatment to the problems of procuring printing needed by the state, and in sec. 25, art. IV, it determined that all printing authorized by the legislature "shall be let by contract to the lowest bidder, but the legislature may establish a maximum price; . . ."

For the printing now in question Democrat Printing Company was the lowest bidder. There is no contention that the price quoted exceeded any maximum price which the legislature established. Why then is the contract not let to that company? Only because a subordinate official, Director of the Bureau of Purchases, is not satisfied with the bid prices. To me, that is no reason at all. If it could be argued that the legislature had power to delegate to the Director the legislative function of establishing a maximum price and had so delegated it, even then the Director did not set a maximum price nor is it claimed that the Democrat's bid exceeded the price so established. Indeed no maximum was set, or has yet been set, of which bidders are notified and which limit they are expected to observe and which they may not exceed.

Sec. 25, art. IV, Const., commands that the contract be let to the low bidder if its bid does not exceed the maximum established price. Now the Director, with the blessing of the majority of the court, adds a further condition, *i.e.,* that a bid otherwise meeting the constitution's conditions must also meet with the approval of the Director of the Bureau. In my opinion the Director has no authority to modify or tamper with the qualifications of printing contracts so plain-

ly expressed by sec. 25. The legislature attempted to give him no such power and without a constitutional amendment it could not.

Therefore, it is my belief that Democrat's bid meets every constitutional requirement; the additional requirement that the bid must satisfy the Director, although the Director has established no price limit, is totally immaterial and beside the point; and the contract must be let to respondent as low bidder in obedience to sec. 25, art. IV, Const.