THE HONORABLE, THE ASSEMBLY Legislature
By 1973 Assembly Resolution 58 you have requested my opinion as to the power of the legislature to suspend or revoke administrative rules.
The issues posed could be ruled upon in a case pending in the state supreme court. Wisconsin Telephone Company v. ILHRDepartment, No. 595, August Term 1973. It is the normal policy of this office not to answer opinion requests on questions currently in litigation.
The reason for this policy is two-fold. First, the dignity of an attorney general's opinion, and therefore its reliability for the legislature and the public, is diminished if it appeared to be issued to influence a court. Second, this policy is compelled by respect due courts.
The particular case pending before the supreme court, however, involves the issues posed by Resolution 58 only tangentially. This *Page 160 
office is one of the participants on behalf of a state agency and is the only party which would raise the issue. Further, I have determined to urge the court not to rule on the issue in that case inasmuch as it is not the real issue before the court.
Essentially the same issue is raised by 1973 Senate Resolution 33 and 1973 Assembly Resolution 44. I have already declined to speak to this issue in two previous opinions because of the pending litigation.
I will proceed to answer the opinion request only because of the peculiar circumstances here, to-wit: both the senate and the assembly have asked for this opinion in three separate resolutions and the issue is before the supreme court only tangentially and probably will not be ruled upon in that case.
The first question is:
 "What is the distinction, if any, between an administrative rule and a law?"
Administrative rules are basically of two kinds. The first kind interprets legislation. Such interpretation may be in the nature of pure statutory construction, or may implement or make specific certain legislation. The second kind relates to the internal organization or procedure of an agency. These features of administrative rules are included within the statutory definition of "rule." Section 227.01 (3), Stats., provides:
 "`Rule' means a regulation, standard, statement of policy or general order . . . of general application and having the effect of law, issued by an agency to implement, interpret or make specific legislation enforced or administered by such agency or to govern the organization or procedure of such agency."
In order to have the effect of law, administrative rules: (a) must be correct interpretations, sec. 227.014 (2) (a), Stats.; (b) must be preceded with notice and hearing, with certain exceptions, sec. 227.02, Stats.; (c) must be filed, secs. 227.01
(4) and 227.023 (1), Stats.; (d) must be published, sec. 227.025, Stats.; (e) must be authorized by enabling legislation, Kachianv. Optometry Examining Board (1969), 44 Wis.2d 1, 8,170 N.W.2d 743; (f) must be reasonable, Kachian, supra; (g) must be adopted by the agency *Page 161 
having the power to enforce the rule, Barry Laboratories, Inc. v.State Bd. of Pharm. (1965), 26 Wis.2d 505, 514-516,132 N.W.2d 833; (h) must be of an interpretive nature, Barry Laboratories,supra; and (i) must have general application rather than a limited, specific application. Frankenthal v. Wisconsin R.E.Brokers' Board (1958), 3 Wis.2d 249, 257b, 88 N.W.2d 352,89 N.W.2d 825; Mondovi Co-op. Equity Ass'n. v. State (1951),258 Wis. 505, 511, 46 N.W.2d 825; and secs. 227.01 (4) and 227.02 (1) (d), Stats.
If otherwise valid under these criteria, an administrative rule has the full force and effect of law. See Josam Mfg Co. v. StateBoard of Health (1965), 26 Wis.2d 587, 596, 133 N.W.2d 301;Thomson v. Racine (1943), 242 Wis. 591, 596, 9 N.W.2d 91; andVerbeten v. Huettl (1948), 253 Wis. 510, 519, 34 N.W.2d 803.
It is important to understand that administrative rules cannot create power but are made in the exercise of power given by the legislature. See State ex rel. Democrat Printing Co. v. Schmiege
(1963), 18 Wis.2d 325, 336, 118 N.W.2d 845. In fact, the legislature cannot constitutionally delegate to an agency the power to determine whether there shall be a law or what its limits shall be, but may delegate only such legislative powers as are necessary to carry into effect the general legislative purpose. Clintonville Transfer Line v. Public Service Comm. (1945), 248 Wis. 59, 68-69, 21 N.W.2d 5. Such delegation must be pursuant to standards evincing an ascertainable legislative purpose and must also provide for procedural safeguards such as judicial review. See Watchmaking Examining Bd. v. Husar (1971),49 Wis.2d 526, 536, 182 N.W.2d 257, and State ex rel. Atty. Gen.v. Wisconsin Constructors (1936), 222 Wis. 279, 286,268 N.W. 238. A power to make a rule is delegated if it is "by fair implication and intendment incident to and included in the authority expressly conferred." State ex rel. Farrell v. Schubert
(1971), 52 Wis.2d 351, 358, 190 N.W.2d 529, vacated on other grounds, 408 U.S. 915, 92 S.Ct. 2500, 33 L.Ed.2d 327.
I conclude, therefore, that if an administrative rule is properly adopted under these criteria and is within the power of the legislature to delegate there is no material difference between it and a law.
The second question is: *Page 162 
 "May the legislature by joint resolution suspend or revoke an administrative rule?"
One of my predecessors has concluded that a proposal to repeal an administrative rule by joint resolution would be invalid if enacted, 43 OAG 350 (1954). The reasoning there was that since an administrative rule is a law and since a law can be repealed only by presentment of a bill to the governor, an administrative rule cannot be repealed by joint resolution. For the same reasons another of my predecessors concluded that a proposal to empower a committee of legislators to void an administrative rule would be invalid. 52 OAG 423 (1963). Accord: Opinions of the Michigan Attorney General, 1957-1958 OAG (Mich) 246 and 1967-1968 OAG (Mich) 65. See also M. St. P. S.S.M.R. Co. v. Railroad Comm. (1908), 136 Wis. 146, 163, 116 N.W. 905.
I agree with my predecessors for the reasons stated in their opinions. In addition, I have considered the argument that those opinions erroneously assumed that an administrative rule is a law in the same sense as is enabling or repealing legislation. That argument would be that since an administrative rule does not become "law" by presentment of a bill to the governor it need not be repealed by presentment of a bill only.
Such an argument must fail, in my opinion, for the reason that administrative rules do not create laws but are exercises of powers pursuant to existing laws. Such rules are invalid if they exceed the bounds of correct interpretation. Section 227.014 (2) (a), Stats. A valid rule is merely a duly adopted correct statement or application of what the law already is. Thus, to repeal a valid rule is effectively to repeal the enabling statutepro tanto.
An administrative rule is either a correct application of its enabling statute or it is not. If it is not, it is invalid and no joint resolution of the legislature could change that fact. If it is a correct application, it is valid and no joint resolution of the legislature could change that fact.
It does not follow that when an agency modifies or repeals its own rules it voids an enabling statute pro tanto. For such agency action, to be valid, must be predicated on better interpreting or applying already established legislative policy in view of changing *Page 163 
circumstances or new knowledge. Further, there is often more than one correct way to apply or interpret legislative policy. Not only are agency repeals subject to the standards of the applicable enabling legislation, they also are subject to judicial review. See secs. 227.01 (3) and 227.05, Stats. As concluded in my answer to your third question, infra, the legislature could empower itself or a committee of its members to affirm or set aside an agency's rule if the legislature or the committee were subject to proper standards and safeguards. Under such standards and safeguards, the legislature or a committee of its members could affirm or set aside an administrative rule in view of changing circumstances, new knowledge, or simply as a reviewing agency examining old knowledge and circumstances in the context of established statutory policy. To repeal an administrative rule other than pursuant to such standards or in the absence of such safeguards, however, is to abrogate what is, by definition, a valid statutory interpretation or application. Therefore, it is to unconstitutionally encroach on executive or judicial functions or both, as is more fully explained in my answer to your third question, infra.
I perceive no material distinction between repealing a law and suspending or revoking it. The effect is the same, to-wit: to take what has been law and make it no longer law. Thus, I conclude that the legislature may not by joint resolution suspend or revoke an administrative rule, absent proper standards and safeguards.
The third question is:
 "May the legislature by law authorize the legislature, by joint resolution, to suspend or revoke an administrative rule?"
No law, including a valid administrative rule, can be suspended or revoked by joint resolution of the legislature. The reason is that such a joint resolution deprives the executive branch of government the opportunity to exercise its power to veto an act of the legislature. Such a joint resolution, therefore, unconstitutionally encroaches on the executive branch of government.
Such encroachment cannot be validated by a statute, even if a particular governor were to approve such a statute. The constitution vests the veto power in the executive. Art. V, sec.10, Wis. Const. A governor could no more constitutionally approve the delegation of executive veto power to another branch of government than the *Page 164 
legislature or the supreme court could approve the delegation of their respective powers to another branch of government.
Thus, the legislature cannot by law authorize the legislature by joint resolution to "suspend or revoke" an administrative rule. A constitutional amendment would be necessary to grant such a power.
The reason an administrative rule can have the force of law is because the legislature has by law provided that administrative agencies have the power to make rules which are valid to the extent they do not exceed the bounds of correct interpretation. I have given consideration to the argument that the legislature could make such rule-making power contingent upon approval by some body either as a condition precedent or subsequent, and that such body might be the legislature acting by joint resolution. On this argument the power given to the legislature by joint resolution would not be to "suspend or revoke" an administrative rule, but would be to "affirm or set aside" such rule as a super agency, as it were, or as another level of administrative review. Such affirmance or setting aside would not be in the nature of voiding a law, as is the case with suspension or revocation, but would be in the nature of a quasi-judicial determination of the validity of an administrative rule as a correct or incorrect interpretation or application of the relevant enabling legislation.
My predecessor dismissed this possibility because such a reviewing agency would not be acting pursuant to ascertainable standards. 43 OAG at 352. I agree with his analysis to the extent such a delegation would not restrict the legislature to act pursuant to such standards. I consider, however, the possibility of a law delegating such power but providing that its exercise be pursuant to proper standards. The question facing the legislature as such a reviewing agency would not be the policy of the enabling law or the policy of the administrative rule, those questions being not at all delegable, but the correctness of a particular administrative rule as an interpretation or application of established legislative policy under standards already legislated.
The determination that an administrative rule is or is not authorized by an enabling statute is a judicial act. See 2 Am.Jur. 2d, Administrative Law, sec. 656, p. 517; Northwestern Wis.Elec. Co. v. Public Service Comm. (1946), 248 Wis. 479, 485,22 N.W.2d 472, 23 N.W.2d 459; and John F. Jelke Co. v. Beck (1932), *Page 165 
208 Wis. 650, 664, 242 N.W. 576. The legislature may bestow such quasi-judicial powers on agencies as are incidental to their administration of particular statutes. State ex rel. Volden v.Haas (1953), 264 Wis. 127, 132, 58 N.W.2d 577, and Holland v.Cedar Grove (1939), 230 Wis. 177, 188, 282 N.W. 111. Agency determinations which are quasi-judicial in nature, however, must be subject to review by the courts. See Family Finance Corp. v.Sniadach (1967), 37 Wis.2d 163, 176, 154 N.W.2d 259, reversed on other grounds, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349. See also Boynton Cab Co. v. Giese (1941), 237 Wis. 237, 296 N.W. 630, and Watchmaking Examining Bd., supra, 49 Wis.2d at 536.
While quasi-judicial powers may be delegated, certain strictly judicial functions cannot be at all delegated. See Wendlandt v.Industrial Comm. (1949), 256 Wis. 62, 67, 39 N.W.2d 854. The question becomes whether the determination that an administrative rule is authorized by enabling legislation, or is a correct interpretation or application thereof, is such a strictly judicial function which cannot be delegated.
I conclude that the courts are likely to hold that such a function can be delegated. The very act of making a rule pre-supposes an agency's quasi-judicial determination that the rule is so authorized and correct. That determination may be delegated since rule-making itself is delegable. Rule-making, then, involves both quasi-judicial and quasi-legislative functions. Further, I see no qualitative difference between an examiner's quasi-judicial decision which becomes the decision of the agency absent a petition for review, see secs. 111.07 (5) and 102.18
(3), Stats., and an agency's rule which is subject to quasi-judicial review by another agency.
It is imperative, however, that judicial review be retained. Article 7, sec. 2, Wis. Const., vests the state's judicial power in the courts. The legislature is not competent to empower itself by joint resolution, a committee of its members or an agency to be the final arbiter of the judicial question whether a rule of an agency is valid under the proper criteria. The legislature would usurp judicial prerogatives were it to empower any body other than a court the final I authority to determine the validity of an administrative rule.
Therefore, I conclude that no law can empower the legislature to suspend or revoke, by joint resolution, an administrative rule on *Page 166 
policy grounds. On the other hand, I conclude that the legislature can be empowered to affirm or set aside an administrative rule by joint resolution if: (a) the delegation restricts the legislature to application of the standards already established by the relevant enabling law, and (b) the legislature's joint resolution determination is subject to judicial review at the instance of a party with sufficient standing.
The fourth question is:
 "May the legislature by joint resolution or law authorize a committee or joint committee of the legislature to suspend or revoke an administrative rule?"
Because of the analysis above, the answer to this question must be no. No valid administrative rule can be suspended or revoked by the legislature by joint resolution or by a committee or joint committee of the legislature. Such a rule, however, could be subject to affirmance or setting aside as a matter of administrative review by such committees acting pursuant to the standards and qualifications discussed in my answer to the third question.
I wish to comment on the wisdom of any proposal to vest quasi-judicial powers in the legislature or in a committee composed of legislators. I am aware that members of both houses feel that certain administrative rules do not in fact reflect the intendment of the original legislation. The feeling is that although these rules may be tested in the courts, see sec. 227.05, Stats., there is need for quicker disposition.
It is this type of need that led to the creation of administrative agencies in the first place. An additional advantage to the administrative system has also been the expertise that develops so that rights are determined quickly and objectively. I urge that the legislature create an additional, independent reviewing agency composed of appropriate professionals before it gives this function to itself or to a committee of its members.
The fifth question is:
 "What is the distinction, if any, between a policy pronouncement issued by an administrator or administrative agency and an administrative rule?" *Page 167 
Section 227.01 (3), Stats., includes "statement of policy" within the very definition of an administrative rule:
 "`Rule' means a regulation, standard, statement of policy or general order . . . of general application and having the effect of law, issued by an agency
. . ." (Emphasis added.)
Thus, if a statement of policy, or policy pronouncement, is otherwise valid under the criteria discussed in answer to the first question, it is no different than any other administrative rule and has the full force of law. If such pronouncement is not otherwise valid, however, as where it has not been duly filed and published, it does not have the force of law and is a legal nullity.
The fact that a policy pronouncement is a legal nullity does not preclude judicial review thereof if that pronouncement is treated by the agency as though it were a validly adopted rule. In other words, if the effect is to apply the statute generally according to such policy pronouncement, judicial review cannot be defeated by the failure of the agency to properly adopt the policy as a rule. See Frankenthal and Barry Laboratories, supra.
The italicized language from sec. 227.01 (3), Stats., supra, also makes it clear that a policy statement which has the force and effect of law is that which is issued by the agency. Rule-making authority is given only to agencies. Section 227.014, Stats. Since only agencies can adopt rules, the power to do so cannot be delegated to a subordinate. Park Bldg. Corp. v.Industrial Comm. (1960), 9 Wis.2d 78, 86, 100 N.W.2d 571. Even a letter from the chief officer of an agency claiming to state agency policy is not official agency action, and in order to avoid confusion the court gave this admonition in Universal Org.of M. F., S. A.P. v. WERC (1969), 42 Wis.2d 315, 323,166 N.W.2d 239:
 ". . . We suggest that, when letters of inquiry are answered by letters of individual commissioners, such letters contain a disclaimer of official commission action so that it is clear to all, particularly laymen, that no `decision' is involved."
I conclude, then, that: (a) there is no material difference between an otherwise valid administrative rule and an otherwise valid policy pronouncement by an agency; and (b) there is a material difference between an otherwise valid administrative rule and a policy *Page 168 
pronouncement by an administrator inasmuch as the former has the force of law and the latter does not.
RWW:CDH