Jose MARTINEZ, Maria Leonor Martinez, Carlos Martinez, Maria Isabel Martinez, Jorge Martinez, Francisco Carrizales, Silvia Carrizales, Mario Rivera, Sr., Martha Rivera, Belinda Rivera, Margarita Guerrero and Jose Guerrero, Plaintiffs-Respondents,†

JOINT COMMITTEE ON LEGISLATIVE ORGANIZATION and Joint Committee for Review of Administrative Rules, Intervenors-Plaintiffs-Respondents,†

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Gerald Whitburn, Secretary of the Department of Industry, Labor & Human Relations, Defendants-Appellants,

GARTH TOWNE, also d/b/a Garth Towne's Farm, John H. Knoch, also d/b/a K-Farms, and G.R. Kirk Company, a foreign corporation, Defendants.

Court of Appeals

*No. 90–1266. Submitted on briefs November 19, 1990.—Decided January 15, 1991.*

(Also reported in 466 N.W.2d 189.)

† Petition to review granted.

273

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Warren D. Weinstein* and *David C. Rice,* assistant attorneys general of Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Lawrence C. Albrecht* and *Michele Sumara* of *Legal Action of Wisconsin, Inc.* of Madison.

On behalf of the intervenors-plaintiffs-respondents, the cause was submitted on the brief of *Jeffrey J. Kassel* and *Brady C. Williamson* of *LaFollette & Sinykin* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The Department of Industry, Labor and Human Relations, a unit of the executive branch of our state government, appeals a summary judgment upholding the constitutionality of sec. 227.26, Stats., that empowers the Wisconsin Legislature's Joint Committee for Review of Administrative Rules (JCRAR) to suspend all or part of an administrative rule after its adoption by DILHR. We hold that sec. 227.26 violates the doctrine of separation of powers and also encroaches upon the authority of the executive branch to implement valid statutory directives.[1] Accordingly, the judgment is reversed and the cause remanded to the trial court for a determination of the issues not previously decided.

---

[1]Because of our holding, we need not address DILHR's argument that sec. 227.26 violates the constitutional requirement of bicameral passage of law.

On May 12, 1989, DILHR adopted Wis. Admin. Code sec. Ind. 72.01(16) (May 1989),[2] amending the minimum wage law to create a new class of probationary employees not subject to the otherwise applicable minimum wage.[3] DILHR defined a probationary employee as a person who has been in employment status 120 days or less. Each time a worker took a new job or resumed employment after a break, he or she again became a probationary employee. The effective date of this rule was July 1, 1989.

On July 1, 1989, JCRAR suspended parts of sec. Ind. 72.01(16). As a result, a probationary employee was defined as one who has been in employment status for three days or less.[4] This was a nonrepeating probationary period.

---

[2]Wis. Admin. Code sec. Ind. 72.01(16) (May 1989) provided:

"Probationary employe" means a person who has been in employment status for an employer for a number of days equal to or less than the number of days specified in s. 101.26(3)(b)1 Stats., within a three-year period. In this subsection, "employer" means a separate entity unless there is common ownership of different establishments or enterprises and the employe worked in one or more of these establishments or enterprises during the probationary period.

Note: If an employe is in employment status 80 calendar days (even if the employe works and is paid for less than 80 calendar days) in one employment period and then returns to the same employer for another employment period, they would not have to start over to reach 120 calendar days, but would only have to be in employment status for 40 additional calendar days to reach the non-probationary rate.

All citations in this opinion to sec. Ind. 72.01(16) refer to Wis. Admin. Code sec. Ind. 72.01(16) (May 1989) as originally promulgated by DILHR, unless otherwise noted.

[3]Section 104.04, Stats., provides that DILHR shall determine the "living-wage."

[4]JCRAR suspended portions of sec. Ind. 72.01(16) so that the resulting definition of a "probationary employe" was "a person

DILHR then informed Wisconsin employers that JCRAR lacked the authority to suspend sec. Ind. 72.01(16), or any other administrative rule, and stated that the rule would be implemented as originally drafted. As a result, Jose Martinez and other migrant workers (collectively Martinez) who were employed in Wisconsin after July 1, 1989, brought suit seeking an order requiring DILHR to enforce sec. Ind. 72.01(16) as it read after the partial suspension.[5] JCRAR and the Joint Committee on Legislative Organization intervened in the action.

In November 1989, shortly after JCRAR suspended parts of sec. Ind. 72.01(16), the federal government raised the federal minimum wage above the state minimum wage level. DILHR then promulgated a new rule, matching the new federal rate and providing for a nonrepeating sixty-day probationary period, effective April 1, 1990. *See* Wis. Admin. Code sec. Ind. 72.01(11) and 72.03(1) (March 1990). Accordingly, the legislature never acted on the repealing bill, and our decision affects only the time period of July 1, 1989, to April 1, 1990.

## STANDARD OF REVIEW

This is a review of a summary judgment. Summary judgment methodology has been described in many cases, such as *Green Spring Farms v. Kersten,* 136 Wis.

---

who has been in employment status for a number of days equal to or less than three."

[5]Martinez also sought a declaration that DILHR exceeded its statutory authority by promulgating sec. Ind. 72.01(16), and that the rule denied the workers equal protection by imposing an arbitrary classification on agricultural migrant workers. The trial court only addressed the dispositive issue of the constitutionality of sec. 227.26, Stats. In light of our holding, the trial court must now address these other issues.

2d 304, 314-17, 401 N.W.2d 816, 820-21 (1987), and we need not repeat it here. Because there are no disputed facts and the only issue, whether sec. 227.26, Stats., is constitutional, is a question of law, we review the trial court's decision de novo. *See Green Spring Farms,* 136 Wis. 2d at 315, 401 N.W.2d at 820. We begin our analysis by noting that statutes are presumed to be constitutional. *See State v. Unnamed Defendant,* 150 Wis. 2d 352, 364, 441 N.W.2d 696, 701 (1989). The party challenging the constitutionality of a statute bears the burden of proving so beyond a reasonable doubt. *State ex rel. Fort Howard Paper Co. v. State,* 82 Wis. 2d 491, 505, 263 N.W.2d 178, 185 (1978).

## THE JOINT COMMITTEE FOR REVIEW OF ADMINISTRATIVE RULES

JCRAR was created pursuant to sec. 13.56, Stats. It is comprised of members of each house of the Wisconsin Legislature, five senators and five members of the assembly with the power to review administrative rules after promulgation.[6] *See* sec. 13.56(3), Stats. (sets out JCRAR's powers and duties). Section 227.26, Stats., sets out the procedure by which JCRAR reviews administrative rules after their adoption.

JCRAR may suspend all or part of a rule only after a public hearing, sec. 227.26(2)(d), Stats., and only for one of the reasons specified in sec. 227.19(4)(d). Within thirty days of the suspension, JCRAR must introduce bills into both houses of the legislature to repeal the suspended rule. Section 227.26(2)(f), Stats. If either bill

---

[6]JCRAR is also empowered to review administrative rules prior to promulgation, sec. 227.19, Stats., and to suspend or extend emergency rules. Section 227.24, Stats. The constitutionality of these sections is not at issue here.

becomes law, the agency may not reenact the rule unless a subsequent law specifically authorizes promulgation. Section 227.26(2)(i), Stats. If both bills are defeated or fail to be enacted, the rule remains in effect as originally promulgated, and JCRAR may not suspend it again. Section 227.26(2)(i), Stats. DILHR concedes that JCRAR correctly followed this statutory procedure.

## SEPARATION OF POWERS

The doctrine of separation of powers is a fundamental principle of our government. *Layton School of Art & Design v. WERC,* 82 Wis. 2d 324, 347, 262 N.W.2d 218, 229 (1978). In Wisconsin, separation of powers is implied from art. IV, sec. 1; art. V, sec. 1; and art. VII, sec. 2, of the Wisconsin Constitution, which vest legislative power in the assembly and senate, executive power in the governor and lieutenant governor and judicial power in the courts, respectively. *State v. Washington,* 83 Wis. 2d 808, 816, 266 N.W.2d 597, 601 (1978). No branch of our government is subordinate to the others, no branch is to seize control over the others except as provided by the constitution and no branch may exercise power committed by the constitution to another. *State v. Holmes,* 106 Wis. 2d 31, 42, 315 N.W.2d 703, 709 (1982).

The test to determine whether a violation of separation of powers has occurred is whether actions by one branch result in the usurpation of powers of another branch. *See J.F. Ahern Co. v. Building Comm'n,* 114 Wis. 2d 69, 104, 336 N.W.2d 679, 695 (Ct. App. 1983). Absolute division of functions between the three branches, however, is not demanded by our constitution. *Layton School,* 82 Wis. 2d at 347–48, 262 N.W.2d at 229. A blending or sharing of powers among the branches is

permissible as long as within the zone of shared powers one branch does not unduly burden or substantially interfere with another branch. *See In re E.B.,* 111 Wis. 2d 175, 184, 330 N.W.2d 584, 589 (1983); *e.g., Enourato v. New Jersey Bldg. Auth.,* 448 A.2d 449, 450 (N.J. 1982) (joint legislative resolution necessary to begin certain building projects proposed by the New Jersey Building Authority held constitutional as a sharing of powers because the legislature did not substantially interfere with the executive branch).

Section 227.26, Stats., violates separation of powers because it deprives the executive branch of the opportunity to exercise its power to veto an act of the legislature.[7] By suspending portions of sec. Ind. 72.01(16), JCRAR has created new law without presentment to the governor, thus denying the governor the power to veto the new law. *See* Bunn & Gallagher, *Legislative Committee Review of Administrative Rules in Wisconsin,* 1977 Wis. L. Rev. 935, 943 (effect of JCRAR's suspension of a rule is to deny governor power to withhold approval of a policy change). Nothing in the constitution allows such a deviation from the presentment requirement. The actions of JCRAR, therefore, unconstitutionally encroach on the executive branch of government.

Our constitution sets out the procedure by which law is created in Wisconsin. A bill must be passed in both houses of the legislature and presented to the governor. Wis. Const. art. VI, secs. 1 and 17; art. V, sec. 10. Passage of a valid law must strictly conform to these standards. Section 227.26, Stats., vests JCRAR with the power to suspend all or parts of rules, thus creating new

---

[7] "Every bill which shall have passed the legislature shall, before it becomes a law, be presented to the governor . . .." Wis. Const. art. V, sec. 10.

rules with the force of law, without following the constitutionally mandated procedure for creating law.

As the attorney general pointed out in 1974 when he advised the legislature that it could not authorize a joint committee to suspend or revoke a rule, "[i]t is important to understand that administrative rules cannot create power but are made in the exercise of power given by the legislature." 63 Op. Att'y Gen. 159, 161 (1974). Thus, when JCRAR suspends an otherwise valid rule, it is essentially depriving the executive branch of its legitimate authority to implement laws previously enacted by the legislature as a whole and approved by the governor.

Although the legislature can delegate this rule-making power to executive agencies, it cannot retain some of that power for itself without violating separation of powers. *See* 63 Op. Att'y Gen. 159, 164 (1974). Other jurisdictions that have considered similar statutes have also held them unconstitutional as violative of separation of powers. *See State ex rel. Barker v. Manchin,* 279 S.E.2d 622, 633 (W. Va. 1981) (statute empowering legislative committee to veto otherwise valid administrative rules violates separation of powers); *State ex rel. Stephan v. Kansas House of Reps.,* 687 P.2d 622, 626 (Kan. 1984) (statute empowering legislature to adopt, modify or revoke administrative rules by concurrent resolution held unconstitutional); *General Assembly v. Byrne,* 448 A.2d 438, 439 (N.J. 1982) (Legislative Oversight Act, which allows the legislature to veto administrative rules by concurrent resolution, held violative of separation of powers); *Opinion of the Justices,* 431 A.2d 783, 785 (N.H. 1981) (opinion that legislative veto not per se unconstitutional, but statute creating mechanism by which legislature could review and either accept or reject agency rules prior to promulgation is unconstitutional);

281

*State v. A.L.I.V.E. Voluntary,* 606 P.2d 769, 772 (Alaska 1980) (statute providing that legislature could annul a duly adopted administrative regulation by concurrent resolution held unconstitutional).

Martinez and JCRAR cite *J.F. Ahern* and argue that sec. 227.26, Stats., does not violate separation of powers because JCRAR's actions are not left unchecked because a repealing law must be passed by the legislature and presented to the governor. In that case, we held that sec. 13.48, Stats., which provides that the building commission, a legislative committee, has the power to waive bidding requirements for construction of state buildings, does not violate separation of powers. *J.F. Ahern,* 114 Wis. 2d at 108, 336 N.W.2d at 697. Because the governor had an absolute check on the commission's exercise of power pursuant to sec. 16.87, Stats. (1977), the commission's powers did not usurp executive powers or unduly burden the executive branch. *J.F. Ahern,* 114 Wis. 2d at 107, 336 N.W.2d at 697.

In *J.F. Ahern,* the governor acted *before* the commission's actions would become effective. This is consistent with the purpose of the separation doctrine "to prevent concentration of unchecked power in the hands of any one branch." *Washington,* 83 Wis. 2d at 826, 266 N.W.2d at 606. In comparison, sec. 227.26, Stats., provides that JCRAR may suspend all or part of a rule, effective immediately. This is not consistent with the doctrine of separation of powers.

Section 227.26, Stats., further violates separation of powers by encroaching on the executive power to implement properly promulgated rules. When the legislature delegates its rule-making power to an agency of the executive branch, as it did here by requiring DILHR to determine the living wage, it vests the executive branch

with the mandatory duty to promulgate and enforce rules and regulations. Once the agency has promulgated valid rules pursuant to the grant of legislative powers, they have the full force and effect of law. *See Josam Mfg. v. State Bd. of Health,* 26 Wis. 2d 587, 596, 133 N.W.2d 301, 307 (1965).

Under sec. 227.26, Stats., JCRAR has the power to suspend all or part of a validly promulgated rule. Thus, even though the agency has fulfilled its obligation by passing valid rules pursuant to a delegation of the legislative rule-making power, sec. 227.26 allows JCRAR to suspend all or part of the rule and prevent the agency from implementing those measures, allowing the legislature to impermissibly interfere with executive powers.

*By the Court.*—Judgment reversed and cause remanded.