Jose MARTINEZ, Maria Leonor Martinez, Carlos Martinez, Maria Isabel Martinez, Jorge Martinez, Francisco Carrizales, Silvia Carrizales, Mario Rivera, Sr., Martha Rivera, Belinda Rivera, Margarita Guerrero and Jose Guerrero, Plaintiffs-Respondents-Petitioners,

JOINT COMMITTEE ON LEGISLATIVE ORGANIZATION and Joint Committee for Review of Administrative Rules, Intervenors-Plaintiffs-Respondents-Petitioners,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Carol Skornicka, Secretary of the Department of Industry, Labor and Human Relations, Defendants-Appellants,

Garth TOWNE, Also D/B/A Garth Towne's Farm, John H. Knoch, Also D/B/A K-Farms and G.R. Kirk Company, a foreign corporation, Defendants.

Supreme Court

*No. 90–1266. Argued November 26, 1991.—Decided January 15, 1992.*

(Also reported in 478 N.W.2d 582.)

687

688

For the plaintiffs-respondents-petitioners there were briefs by *Lawrence G. Albrecht, Kevin G. Magee* and *Legal Action of Wisconsin, Inc.,* Madison and oral argument by *Mr. Albrecht.*

For the intervenors-plaintiffs-respondents-petitioners there were briefs by *Jeffrey J. Kassel, Brady C. Williamson* and *LaFollette & Sinykin,* Madison and oral argument by *Mr. Kassel.*

For the defendants-appellants the cause was argued by *Mr. Weinstein,* assistant attorney general, with whom on the brief was *David C. Rice,* assistant attorney general *Warren D. Weinstein,* assistant attorney general and *James E. Doyle,* attorney general.

Amicus Curiae brief was filed by *LeRoy A. Lokken,* Madison for Wisconsin Alliance of Cities.

STEINMETZ, J. The issue in this case is whether sec. 227.26, Stats., is unconstitutional. Section 227.26 authorizes the legislature's Joint Committee for Review of Administrative Rules (JCRAR) to temporarily suspend administrative rules pending bicameral review by the legislature and presentment to the governor for veto or other action.[1]

---

[1]JCRAR was created by sec. 13.56(1), Stats. The committee consists of five senators and five representatives appointed, as are

The Dane county circuit court, the Honorable Susan Steingass, decided that the statute met the requirements of bicameral passage, and the presentment clause did not interfere with the separation of powers doctrine, and, therefore, was constitutional. The court of appeals, however, reversed the trial court's decision concluding that sec. 227.26, Stats., intrudes on the executive branch of government. *See Martinez v. DILHR*, 160 Wis. 2d 272, 280, 282, 466 N.W.2d 189 (Ct. App. 1991). This court concludes that sec. 227.26 is carefully drawn to avoid a separation of powers challenge and meets presentment and bicameral requirements. Furthermore, the statute facilitates a cooperative venture between the legislature and administrative agencies to make and implement rules that are consistent with their statutory authorization. Accordingly, we reverse the decision of the court of appeals and reinstate the holdings of the trial court.

There is no dispute with regard to the factual background of this case. DILHR promulgated Wis. Admin. Code sec. Ind. 72.01(16), which created a new category of employee to whom employers could pay, for a 120-day repeating probationary period, a sub-minimum wage of twenty cents an hour less than the regular minimum wage. Acting under its statutory review authority, JCRAR held a public hearing on June 8, 1989, to hear concerns regarding the minimum wage regulation.[2]

JCRAR found that sec. Ind. 72.01(16) failed to meet statutory requirements; it failed to comply with legisla-

the members of standing committees in their respective houses, from the majority and minority political parties in each house.

[2]Under sec. 227.26(2)(c), Stats.:

[t]he committee shall hold a public hearing to investigate any complaint with respect to a rule if it considers the complaint meritorious and worthy of attention.

tive intent; and it contained classifications that were arbitrary and capricious causing undue hardship to workers. On July 1, 1989, JCRAR voted to suspend part of the rule and amend it by shortening the probationary period from 120 days to three days.[3] The committee also eliminated the rule's repeating nature.

DILHR notified Wisconsin employers that they should ignore the changes made by JCRAR and advised them that it would not take action against employers who paid the sub-minimum wage in violation of JCRAR's amended rule.

Migrant farm workers were particularly aggrieved by DILHR's action since they usually work for an employer for only a few weeks at a time and migrate throughout Wisconsin and other states as the seasons and harvests change. Under the original rule, migrant workers were treated as probationary employees whenever they changed jobs and were perpetually paid less than the "living wage" set by DILHR.[4]

Following JCRAR's partial suspension of DILHR's rule, a new rule was introduced in both houses of the legislature in accordance with sec. 227.26(2)(f), Stats.[5]

---

[3]Under sec. 227.26(2)(d), Stats.:

[t]he committee may suspend any rule by a majority vote of a quorum of the committee. A rule may be suspended only on the basis of testimony in relation to that rule received at a public hearing and only for one or more of the reasons specified under s. 227.19(4)(d).

[4]The term "living wage" means "compensation for labor paid, whether by time, piecework or otherwise, sufficient to enable the employe receiving it to maintain himself or herself under conditions consistent with his or her welfare." Sec. 104.01(5), Stats. Wisconsin law also provides that "[e]very wage paid or agreed to be paid by any employer to any employe, except as otherwise provided in s. 104.07, shall be not less than a living wage." Section 104.02, Stats.

[5]Under sec. 227.26(f), Stats., "[i]f any rule is suspended, the

While this matter was pending, the federal minimum wage was raised above Wisconsin's minimum wage. DILHR promptly promulgated a new training wage rule which established a non-repeating 60-day probationary period. The new rule was not suspended by JCRAR and took effect April 1, 1990.[6]

Despite these changes, migrant workers affected by DILHR's actions in 1989 filed this lawsuit to challenge DILHR's action of unilaterally enforcing the sub-minimum training wage after JCRAR had suspended its implementation.[7] DILHR responded to the challenge by arguing that sec. 227.26, Stats., is unconstitutional reasoning that the statute violates the requirement of bicameral passage by both houses of the legislature; it violates the presentment clause of art. V, sec. 10 of the Wisconsin Constitution; and it violates the separation of powers doctrine. JCRAR intervened in the action and defended the constitutionality of the statute.

The trial court held that sec. 227.26, Stats., does not violate either the bicameral passage or the separation of

committee shall, within 30 days after the suspension, introduce in each house of the legislature, for consideration at any regular session, a bill to repeal the suspended rule."

[6]*See* Wis. Admin. Code sec. Ind. 72.01(11) which states: " 'Probationary employe' means a person who has been in employment status for a cumulative total of 2 months or less within a three-year period." The section notes:

If employe is in employment status 40 calendar days (even if the employe works and is paid for less than 40 calendar days) in one employment period and then returns to any employer within 3 years for another employment period, the employe would not have to start over to reach 60 calendar days, but would only have to be in employment status for 20 additional calendar days to reach the non-probationary rate.

[7]The period of time that is of concern is from July 1, 1989 through March 23, 1990.

powers requirements and therefore is constitutional. The court also concluded that the Department of Industry, Labor and Human Relations and its secretary exceeded their statutorily given authority and ordered DILHR to notify each employer in the state as to what the regulations actually were during the period from July 1, 1989, through March 23, 1990. Moreover employers were to pay back wages owed to any employees who were not paid in accordance with the proper regulations.

The court of appeals reversed the decision of the trial court reasoning that sec. 227.26, Stats., "deprives the executive branch of the opportunity to exercise its power to veto an act of the legislature," and it "encroach[es] on the executive power to implement properly promulgated rules." *Martinez,* 160 Wis. 2d at 280, 282.

■

The case before us concerns whether sec. 227.26, Stats., interferes with the constitutional grant of powers to the three branches of state government. The case raises questions of law which the supreme court reviews de novo. *Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 883 (1987). There is a strong presumption that a legislative enactment is constitutional. *State v. Sher,* 149 Wis. 2d 1, 10, 437 N.W.2d 878 (1989). The party challenging the constitutionality of a statute must prove that the statute is unconstitutional beyond a reasonable doubt. *State v. Tarantino,* 157 Wis. 2d 199, 212-13, 458 N.W.2d 582 (Ct. App. 1990). Any doubt must be resolved in favor of upholding the statute. *Chappy v. LIRC,* 136 Wis. 2d 172, 185, 401 N.W.2d 568 (1987).

This state's separation of powers doctrine is implicitly created by the constitution.[8] Wisconsin courts interpret the Wisconsin Constitution as requiring shared and merged powers of the branches of government rather than an absolute, rigid and segregated political design. *See Integration of Bar Case,* 244 Wis. 8, 46, 11 N.W.2d 604, 621, 12 N.W.2d 699 (1944). In *State v. Washington,* 83 Wis. 2d 808, 825, 266 N.W.2d 597 (1978) the court stated that "it is neither possible nor practicable to categorize all governmental action as exclusively legislative, executive or judicial." In fact, the doctrine "must be viewed as a general principle to be applied to maintain the balance between the three branches of government, to preserve their respective independence and integrity, and to prevent concentration of unchecked power in the hands of any one branch." *Id.* at 826. Thus, the separation of powers doctrine allows the sharing of powers and is not inherently violated in instances when one branch exercises powers normally associated with another branch.[9]

When there exists a sharing of powers, we have stated that "one branch of government may exercise power conferred on another only to an extent that does not unduly burden or substantially interfere with the other branch's role and powers." *State v. Unnamed*

[8]The Wisconsin Constitution implicitly, rather than expressly, creates the separation of powers doctrine. The doctrine is created by the provisions of art. IV, sec. 1 which vests legislative power in the senate and assembly; art. V., sec. 1 vesting executive power in the governor and lieutenant governor; and art. VII, sec. 2 vesting judicial power in a unified court system.

[9]For more discussion of the mixing of powers see *Washington,* 83 Wis. 2d 808, 826–27, n.13. *See also Layton School of Art & Design v. WERC,* 82 Wis. 2d 324, 262 N.W.2d 218 (1978).

*Defendant,* 150 Wis. 2d 352, 360, 441 N.W.2d 696 (1989). The concern is with "actual and substantial encroachments by one branch into the province of another, not theoretical divisions of power." *J.F. Ahern v. Building Commission,* 114 Wis. 2d 69, 104, 336 N.W.2d 679 (Ct. App. 1983).

The separation of powers doctrine is violated when one branch interferes with a constitutionally guaranteed "exclusive zone" of authority vested in another branch. *Fiedler v. Wisconsin Senate,* 155 Wis. 2d 94, 100, 454 N.W.2d 770 (1990); *In Matter of Complaint Against Grady,* 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984). *See generally* Honorable George R. Currie & Warren H. Resh, *The Separation of Powers Control of Courts and Lawyers,* 47 Wis. Bar Bull. 7 (Dec. 1974). However, the "exclusive zone" of authority is not relevant in this case since the legislative branch and the executive branch share inherent interests in the legislative creation and oversight of administrative agencies.

We have long recognized that administrative agencies are creations of the legislature and that they can exercise only those powers granted by the legislature. *Thomson v. Racine,* 242 Wis. 591, 597, 9 N.W.2d 91 (1943). Legislative power may be delegated to an administrative agency as long as adequate standards for conducting the allocated power are in place. *See J.F. Ahern,* 114 Wis. 2d at 88. The rule-making power exercised by DILHR and reviewed by JCRAR in this case is derived from authority delegated to DILHR by the legislature. *See* secs. 101.02(1) and 104.04, Stats. Under sec. 227.19(4)(d), Stats., the law sets forth the grounds upon which JCRAR may temporarily suspend a rule. They are as follows:

697

1.  An absence of statutory authority.
2.  An emergency relating to public health, safety or welfare.
3.  A failure to comply with legislative intent.
4.  A conflict with state law.
5.  A change in circumstances since enactment of the earliest law upon which the proposed rule is based.
6.  Arbitrariness and capriciousness, or imposition of an undue hardship.

We find the law to set forth adequate standards for JCRAR to follow when exercising its powers.

As a legislative creation, DILHR has no inherent constitutional authority to make rules, and, furthermore, its rule-making powers can be repealed by the legislature. In *Schmidt v. Local Affairs & Development Dept.,* 39 Wis. 2d 46, 56, 158 N.W.2d 306 (1968), the court concluded that "[t]he very existence of the administrative agency . . . is dependent upon the will of the legislature; its . . . powers, duties and scope of authority are fixed and circumscribed by the legislature and subject to legislative change." It is appropriate for the legislature to delegate rule-making authority to an agency while retaining the right to review any rules promulgated under the delegated power. *Rules of Court Case,* 204 Wis. 501, 513, 236 N.W. 717 (1931).

When DILHR instructed employers to ignore JCRAR's changes, it exceeded its powers. The court in *Milwaukee v. Railroad Comm.,* 182 Wis 498, 501, 196 N.W. 853 (1924), wrote that the legislature "constitutes the original source of power; . . . and such power continues under all circumstances . . . [however] its creature cannot, at any time, possess powers superior to it." In

fact, "administrative agencies are a part of the legislative branch of government that created them and by implication are not clothed with the power to declare unconstitutional the laws of their creator." *Milwaukee v. Wroten,* 160 Wis. 2d 207, 218, 466 N.W.2d 861 (1991). *See also Kmiec v. Town of Spider Lake,* 60 Wis. 2d 640, 646, 211 N.W.2d 471 (1973). Thus, DILHR does not have the authority to declare JCRAR's rule changes void.

We conclude that defendants' arguments alleging that sec. 227.26, Stats., is unconstitutional because it violates the requirements of bicameral passage by both houses of the legislature and the presentment clause of art. V, sec. 10, of the Wisconsin Constitution are unfounded. It is understood that an administrative rule is not legislation as such and any law arising from the suspension or adoption of a rule by JCRAR must meet both the bicameral passage and presentment requirements.[10] Section 227.26, Stats., furthers bicameral passage, presentment and separation of powers principles by imposing mandatory checks and balances on any temporary rule suspension—only the formal bicameral enactment process coupled with executive action can make permanent a rule suspension.

The suspension process originates with the filing of a meritorious complaint to JCRAR which it must investigate by public hearing. Section 227.26(2)(c), Stats. After reviewing testimony presented at a public hearing, a majority of a quorum of the committee may vote to

[10]The Idaho Supreme Court has found a difference between regulation and legislation when it upheld that state's legislative veto statute. *See Mead v. Arnell,* 791 P.2d 410 (Idaho 1990). That court held that "while these rules and regulations may be given the 'force and effect of law,' they do not rise to the level of statutory law." *Id.* at 414.

suspend the rule or a part of the rule only on the basis of one or more of six enumerated reasons which provide a check against arbitrary agency rule-making. Section 227.26(2)(d). That process must begin within 30 days after JCRAR has voted to suspend in whole or in part any rule. Section 227.26(2)(f). During that month, JCRAR must introduce a bill in each house of the legislature to repeal the suspended rule. *Id.*

The statute unambiguously defines the effect of the committee's efforts as follows: "If both bills . . . are defeated, or fail to be enacted in any other manner, the rule remains in effect and the committee may not suspend it again." Section 227.26(2)(i), Stats. The statute continues in stating that "[i]f either bill becomes law, the rule is repealed . . .." *Id.* Furthermore, the governor has the opportunity to veto any legislative action to suspend a rule permanently.[11]

The full involvement of both houses of the legislature and the governor are critical elements of sec. 227.26, Stats., and these elements distinguish Wisconsin from the statutory schemes found to violate separation of powers doctrines in other states.[12] Moreover, we give little weight to precedents from states that apply

---

[11]The authority of the governor to veto legislation is grounded in art. V, sec. 10 of the Wisconsin Constitution.

[12]Appellants cite several decisions from other states in support of its contention that sec. 227.26 is unconstitutional: *State v. A.L.I.V.E. Voluntary,* 606 P.2d 769 (Alaska 1980); *State ex rel. Stephan v. Kansas House of Representatives,* 687 P.2d 622 (Kan. 1984); *General Assembly of the State of New Jersey v. Byrne,* 448 A.2d 438 (N.J. 1982); *State ex rel. Barker v. Manchin,* 279 S.E.2d 622 (W. Vir. 1981). None of the cases listed above, however, involve a procedure comparable to that found in sec. 227.26, Stats.

"express" separation of powers provisions.[13]

As a matter of public policy, it is incumbent on the legislature, pursuant to its constitutional grant of legislative power, to maintain some legislative accountability over rule-making. Such legislative responsibility adheres to the fundamental political principle and design of our democracy which makes elected officials accountable for rules governing the public welfare. Section 227.26, Stats., is carefully designed so that the people of this state, through their elected representatives, will continue to exercise a significant check on the activities of non-elected agency bureaucrats. Furthermore, the rule suspension process provides a legislative check on agency action which prevents potential agency over-reaching.

Rule suspension has occurred relatively infrequently over the past 25 years and has not met with challenges from the executive branch until now. In the case at bar, it is a legitimate practice for the legislature, through JCRAR, to retain the ability to suspend a rule which is promulgated in derogation of the delegated authority. We agree with the attorney general's statement that "the legislature could empower itself or a committee of its members to affirm or set aside an agency's rule if the legislature or the committee were subject to proper standards or safeguards." 63 Op. Att'y Gen. at 162.

---

[13]Judge Gartzke wrote in *J.F. Ahern,* 114 Wis. 2d at 102, that the courts of this state:

> [G]ive little weight to precedents [from other states] applying express separation of powers provisions. Unlike the constitutions in those states, Wisconsin's constitution contains no express separation of powers provision. The doctrine, as developed by our supreme court, has been liberally applied. To follow jurisdictions which require strict compliance with the doctrine would be to ignore the decisions of this state's supreme court.

We hold that JCRAR's suspension power is delegated to it pursuant to legitimate legislative standards, and, furthermore, sufficient procedural safeguards are available to prevent unauthorized decisions by the committee. We therefore reverse the decision of the court of appeals and declare sec. 227.26, Stats., constitutional. As a result of this holding, the migrant workers will receive benefits of Wis. Admin. Code sec. Ind. 72 as that rule was filed following action by JCRAR during the period of July 1, 1989, through March 23, 1990.

*By the Court.*—The decision of the court of appeals is reversed.