The Honorable Mike Huckabee, Governor State Capitol Little Rock, Arkansas 72201
Dear Governor Huckabee:
I am writing in response to your request for an opinion on the constitutionality of House Bill 1018, which is currently pending in the 2001 regular session of the General Assembly. The bill addresses the legislative oversight of administrative rules and regulations. You seek my opinion as to "the constitutionality of House Bill 1018 in light ofChaffin v. Arkansas Game and Fish Commission, 296 Ark. 431,757 S.W.2d 950 (1988)" and state that "[s]pecifically, I am asking whether this bill violates the doctrine of separation of powers as found in Article4 of the Arkansas Constitution."
RESPONSE
It is my opinion, as more fully explained below, that House Bill 1018 is constitutionally suspect under the ruling expressed in Chaffin, supra. To some degree, the issue may turn upon how the requirements of the Bill are applied. That is, a court faced with a constitutional challenge may scrutinize the practical impact of the Bill, if enacted, and the results accruing thereunder. I cannot, of course, engage in this type of factual analysis in an Attorney General opinion, nor could anyone with respect to a "bill," which has yet to be adopted. The analysis in the Chaffin case, however, provides a strong indication that the Arkansas Supreme Court would view the requirements of House Bill 1018 as an impermissible transgression of the "separation of powers" doctrine.
 DISCUSSION
The Provisions of House Bill 1018
House Bill 1018 is entitled "An Act to Amend Arkansas Code 10-3-309
Relating to the Review of Agency Regulation [sic] By the Legislative Council; and for Other Purposes." It amends an existing provision of law that provides for legislative oversight of administrative rules and regulations. The preamble to the current statute (which preamble is retained by HB1018) states that:
 (a)(1) In the passage of this section, the General Assembly is aware of the significant number of laws which have been enacted granting to boards, commissions, departments, and administrative agencies of state government the authority to promulgate and enforce rules and regulations. The General Assembly is further aware that ample safeguards have not been established whereby the General Assembly may be informed of the circumstances in which administrative rules and regulations do not conform to legislative intent.
 (2) It is the purpose of this section to establish a method for continuing legislative review of such rules and regulations whereby the General Assembly may, at each legislative session, take remedial steps to correct abuses of rule-making authority or clarify legislative intent with respect to the rule-making authority granted the administrative boards, commissions, departments, or agencies.
Current law (A.C.A. § 10-3-309 (Supp. 1999), provides that before any rule or regulation of any state agency may be revised, promulgated, amended, or changed, a copy of the rule must be filed with the Legislative Council[1] at least thirty days before expiration of the public comment period required by the Administrative Procedures Act. A.C.A. § 10-3-309 (e)(1)(A). The current statute states that the Legislative Council "shall act in an advisory capacity to the General Assembly with respect to administrative rules . . . and shall report to the General Assembly at each regular session of all administrative rules and regulations which the Legislative Council believes to be contrary to legislative intent or promulgated without legislative authority. In addition, the Legislative Council shall submit appropriate legislation to the General Assembly to correct any such finding." A.C.A. § 10-3-309
(d)(2). If the Legislative Council determines that the proposed rule or rule change is contrary to legislative intent, the Chairman shall file a statement in writing with the state agency, setting forth the Council's conclusions. A.C.A. § 10-3-309 (e)(4).
House Bill 1018 amends the current law by first deleting subdivision ((d)(2)), which states that the Legislative Council acts in an advisory capacity to the General Assembly, shall report on rules it believes to be contrary to legislative intent and shall submit appropriate legislation to the General Assembly to correct such finding. The new bill also deletes the portion of the existing statute, subdivision (d)(4), which requires the Legislative Council to file a statement in writing with the relevant state agency when it finds a rule contrary to legislative intent.
The bill then inserts a new subdivision into the statute, which provides in pertinent part as follows:
 (e) The Legislative Council shall selectively review possible, proposed, or adopted rules and regulations and prescribe appropriate council procedures for that purpose. The council may receive and investigate complaints from members of the public with respect to possible, proposed, or adopted rules and regulations and hold public proceedings on those complaints.
 (1) The council may require a representative of an agency whose possible, proposed, or adopted rule or regulation is under examination to attend a council meeting and answer relevant questions. The council may also communicate to the agency its comments on any possible, proposed, or adopted rule or regulation and require the agency to respond to them in writing.
 (2) The council may recommend enactment of a statute to improve the operation of the agency. The council may also recommend that a particular rule or regulation be superseded in whole or in part by statute and refer to the recommendation to the appropriate committee or committees of the General Assembly. . . .
 (3)(A) If the council objects to all or any portion of a rule or regulation because the council considers it to be beyond the procedural or substantive authority delegated to the adopting agency, the council may file that objection with the Secretary of State and with the agency issuing the rule or regulation in question. The filed objection shall contain a concise statement detailing the precise reasons that the council considers the rule or regulation, or portion thereof, to be beyond the procedural or substantive authority delegated to the agency.
 (B) The agency shall maintain a permanent register open to public inspection of all objections by the council.
 (C) The Secretary of State shall publish and index an objection filed pursuant to this subsection in the Arkansas Register and indicate its existence in connection with the rule or regulation in question.
 (D) Within thirty (30) calendar days after the filing of an objection by the council to a rule or regulation, the issuing agency shall respond in writing to the council. After receipt of the response, the council may withdraw or modify its objection.
* * *
 (4) The council may recommend to an agency that it adopt a rule or regulation. [Emphasis added.]
Your question is whether the relevant provisions of House Bill 1018 violate the "separation of powers" doctrine,[2] as interpreted inChaffin v. Arkansas Game Fish Commission, supra.
Standard of Review and The Separation of Powers Doctrine
It is important to point out two canons of statutory construction prior to a recitation of the separation of powers doctrine. Acts of the General Assembly are entitled to a presumption of constitutionality and if it is possible to construe a statute so as to pass constitutional muster, the Arkansas Supreme Court will do so. Ports Petroleum Co. v. Tucker,323 Ark. 680, 916 S.W.2d 749 (1996). In fact, all doubts are resolved in favor of constitutionality. Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729
(1994). A clear incompatibility between a statute and the Constitution must be shown before the statute will be held unconstitutional. Pogue v.Cooper, 284 Ark. 105, 679 S.W.2d 207 (1984). Additionally, the burden of proving a statute unconstitutional is upon the party challenging it.Clinton v. Bonds, 306 Ark. 554, 816 S.W.2d 169 (1991).
In addition, it has often been held that the Arkansas Constitution is not a grant, but a limitation of powers; and the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations imposed by the Arkansas or United States Constitution. Wellsv. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979). While the United States Constitution is a grant of powers, beyond the scope of which the federal government has no power to act, Arkansas' Constitution is a limitation of power. Its provisions list what government cannot do, and in the absence of such limiting language, the state government may act. State v.Ashley, 1 Ark. 513, 538 (1839); St. Louis, I.M.S. Rwy Co. v. State,99 Ark. 1, 14 (1911); Baratti v. Koser Gin Co., 206 Ark. 813, 817 (1944); and Smart v. Gates, 234 Ark. 858, 860 (1961).
House Bill 1018, if enacted, would be presumed a valid enactment of the General Assembly unless it is contrary to some provision of the Arkansas or United States Constitution. Your question regards the "separation of powers" doctrine.
The Arkansas Constitution contains an express "separation of powers" doctrine. Some states have merely an implied doctrine. In Arkansas, the concept is embodied at article 4, §§ 1 and 2, as follows:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them confided to a separate body of magistracy, to with: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
The law of Arkansas requires a "strict" application of the doctrine. SeeSpradlin v. Arkansas Ethics Commission, 314 Ark. 108, 858 S.W.2d 684
(1993), citing Oates v. Rogers, 201 Ark. 346, 144 S.W.2d 437 (1940). Seealso, Spradlin v. Arkansas Ethics Commission: A Hard-Line Approach toSeparation of Powers, 48 Ark. L. Rev. 755 (1995). It has been stated that the doctrine is necessary to preserve the critical system of "checks and balances" built into our form of government. Streett v. Roberts,258 Ark. 839, 529 S.W.2d 343 (1975) (Byrd, J. concurring).
Legislative "Vetoes"
I have not found any case law in Arkansas addressing the legislative oversight of administrative rules and regulations in the context of a separation of powers analysis. (The Chaffin case did not involve such oversight, but will be discussed in detail later in this opinion.) The courts of a number of other states, however, have addressed and ruled on similar statutory provisions. The legislative oversight of administrative rules and regulations, which in some states involves actual approval or disapproval of rules and regulations, has been called the "legislative veto." It is ordinarily argued that such legislative oversight infringes on the power of the executive branch to makes rules and thereby "enforce the law." It has also been successfully argued, however, that such oversight can infringe on the power of the judicial branch to "interpret" the law. The argument is that the judicial branch, rather than the legislative branch, is invested with the power to determine when an administrative rule or regulation is contrary to legislative intent, or outside the power of the promulgating agency.
A strong majority of the courts analyzing the constitutionality of laws authorizing "legislative vetoes" have invalidated the laws on various grounds, often including the "separation of powers" doctrine. See e.g.,Blank v. Department of Corrections, 462 Mich. 103, 611 N.W.2d 530 (2000) (sections of the Michigan Administrative Procedures Act (APA) requiring administrative agencies to obtain approval of a joint committee of legislature, or legislature itself, before enacting new administrative rules, violated enactment and presentment requirements and separation of powers provision of state constitution); Michigan State EmployeesAssociation v. Michigan Liquor Control Commission, 232 Mich. App. 456,591 N.W.2d 353 (1999); (sections of APA that give the legislature's Joint Committee on Administrative Rules authority to veto administrative rules violates enactment and presentment provisions and separation of powers doctrine); Missouri Coalition for the Environment v. Joint Committee onAdministrative Rules, 948 S.W.2d 125 (Missouri 1997) (statutory provision suspending Department of Natural Resources rulemaking pending Committee approval, preventing promulgation of rules without Committee approval and authorizing Committee to suspend and withdraw rules already promulgated violated passage and presentment provisions of state constitution and separation of powers doctrine); Meadows v. Hechler, 195 W.Va. 11,462 S.E.2d 586 (1995) (statute which permitted administrative regulations to "die" if legislature failed to take action impermissibly encroached on executive branch's obligation to enforce the law under separation of powers doctrine); State ex rel. Stephan v. Kansas House ofRepresentatives, 236 Kan. 45, 687 P.2d 622 (1984) (statute which provided that legislature may adopt, modify or revoke administrative rules and regulations by concurrent resolutions passed by legislature without presentment to governor was unconstitutional usurpation of powers);Legislative Research Commission v. Brown, 664 S.W.2d 907 (Ky. 1984) (statutes setting out plan for review of proposed regulations by General Assembly or Legislative Research Committee were unconstitutional as in violation of separation of powers); General Assembly v. Byrne,90 N.J. 376, 448 A.2d 438 (1982) ("Legislative Oversight Act" violated separation of powers by giving Legislature excessive power to impede executive in its constitutional mandate to faithfully execute the law);State ex rel. Barker v. Manchin, 167 W.Va. 155, 279 S.E.2d 622 (1981) (sections of APA which empowered legislative rulemaking review committee to veto rules and regulations otherwise validly promulgated by administrative agencies violated separation of powers); Opinion of theJustices, 121 N.H. 552,431 A.2d 783 (1981) (Senate Bill which would amend APA to create mechanism by which legislature could review, accept or reject rules proposed by administrative agencies was unconstitutional as an unlawful delegation of legislative power to a smaller body within the legislature); and State v. A.L.I.V.E. Voluntary, 606 P.2d 769 (Ak. 1980) (statute allowing legislature to invalidate administrative rules by concurrent resolution unconstitutional under the "enactment" provisions of Alaska Constitution). See also Immigration and Naturalization Servicev. Chadha, 462 U.S. 919 (1983) (congressional resolution passed pursuant to Immigration and Nationality Act to override the U.S. Attorney General's decision to suspend the deportation of an individual violated the "Enactment and Presentment Clause" of the United States Constitution and eroded carefully defined separation of powers). See contra, however,Martinez v. Department of Industry, Labor and Human Relations,165 Wis.2d 687, 478 N.W.2d 582 (1992) (statute which authorized Joint Committee for Review of Administrative Rules to temporarily suspend agency rules pending bicameral review by legislature and presentment to the governor for veto or other action was not unconstitutional); andMead v. Arnell, 117 Idaho 660, 791 P.2d 410 (1990) (statute authorizing legislative repeal of rules and regulations of administrative agencies was constitutional). See also a plethora of legal commentary on the issue, a listing of which is compiled at Dean, Legislative Veto of AdministrativeRules in Missouri: A Constitutional Virus, 57 Missouri L. Rev. 1157 at n. 9.
The House Bill about which you inquire, however, is not on its face a "legislative veto." It requires legislative review and recommendations on administrative rules, and the questioning of agency officials about those rules. It also provides for written responses from the agency and the publication of official "objections" by the Legislative Council. It does not give the Legislative Council express authority to approve, disapprove, suspend, or otherwise prevent the implementation of such rules. None of the reported decisions string-cited above involved this lesser type of legislative review of agency rulemaking and I have found no reported case on the exact point. The question then becomes whether this more subtle type of legislative oversight of administrative rules and regulations can withstand separation of powers scrutiny. This is where the decision in Chaffin v. Arkansas Game and Fish Commission,supra becomes relevant.
The Chaffin Decision
In Chaffin, the Arkansas Game and Fish Commission argued, among other things, that the Legislative Council's practice of "review and advice" of professional services contracts entered into by state agencies was an unconstitutional restriction on the agency's power.[3] Specifically, the relevant appropriation act provided that:
 The agency, board, commission, department or institution to whom funds are appropriated by this act shall not enter into any contract for any professional or consultant services which shall extend for more than twenty (20) actual working days or the total compensation exceeds five thousand ($5,000) during any one fiscal year without first seeking the advice of the Arkansas Legislative Council. Provided further, that all contracts for professional or consultant services shall be submitted monthly to the Chief Fiscal Officer of the State for reporting to the Legislative Council.
296 Ark. at 442.
Testimony in the case revealed that the "Review and Advice Committee" of the Legislative Council was set up to advise state agencies on the intent of legislative appropriations and to let the legislature know whether its intent was being carried out. Id. The Committee, after hearing a request for a particular contract, would stamp it favorable or unfavorable. Id.
There was testimony by Committee members that what happened after that was up to the executive body and the Committee of the Council was merely acting in an "advisory capacity." Id.
The Arkansas Supreme Court unanimously disagreed, stating:
 Despite [the Committee member's] testimony that the committee is merely "advising" an agency to act, the proof of the pudding is in the eating. In this case the eating is how that "advice" is treated. Since 1977 the Department of Finance and Administration has disapproved any request that the committee stamped unfavorable. The effect of the "advice" is simply a veto of executive actions by the legislature.
 It is unreasonable to expect any state agency to defy such a body that has the power to determine its well-being. . . . The "advice" offered by the committee to an agency is tantamount to a legislative order on how to execute a contract.
* * *
 An unconstitutional encroachment may not always take the form of outright invasion. A subtle coercion exercised by powerful branch of government can effectively tie the hands of a coordinate branch. The executive authority should be free, not only from blatant usurpation of its powers, but from paralyzing interference as well. The legislature cannot hold the executive branch hostage to its will. While it can and should hold hearings and investigate at length the performance of state agencies, it cannot intrude on the prerogatives of the executive branch of government.
296 Ark. at 443-444.[4]
Analysis
It is impossible to obtain the "proof of the pudding" with regard to House Bill 1018, as it has not been enacted or implemented. Several of its provisions, however, parallel and even exceed the "advice" required in Chaffin. Just like the legislative review of contracts in Chaffin,
House Bill 1018 authorizes the Legislative Council to advise or make recommendations to state agencies as to the legislative intention of acts passed by the General Assembly. Just like in Chaffin, the Legislative Council either has a favorable recommendation (by filing no objection) or an unfavorable recommendation (by filing an objection). House Bill 1018 goes further, however, in statutorily requiring the appearance of agency personnel before the Council and written statements responsive the Council's concerns. A formal objection may then be filed by the Legislative Council with the Secretary of State, which is then indexed and filed with the rule.
One element present in the Chaffin case, however, but missing from House Bill 1018 is the fact that in Chaffin, the evidence showed that the Department of Finance and Administration would invariably disapprove any contract which did not receive a "favorable" recommendation by the Council. Under HB 1018, however (if enacted), the Secretary of State will presumably publish the objectionable rule or regulation in the Arkansas Register, along with the objection, as is required by the Bill. A rule upon which an objection has been filed will presumably still become effective. It may be then that the Bill obviates the possibility of an effective "veto" of executive action.
In my opinion, however, the language of the Chaffin court as to the "subtle coercion" of the legislative branch in this regard should be emphasized. As the court noted, "[i]t is unreasonable to expect any state agency to defy such a body that has the power to determine its well-being." Id. at 443. The court is referring to the legislature's power of appropriation to fund the agency's activities. It is in my opinion no coincidence that the only state agency ever to raise a judicial challenge to the Legislative Council's powers is one with a constitutionally secured stream of revenue. See Amendment 35, § 8 (requiring all moneys arising from the operation of the Game and Fish Commission and administration of the laws pertaining to wildlife to be deposited into the "Game Protection Fund," which, after appropriation, may only be expended by the Commission). See also Powers, supra n. 4, at 140 (documenting at least one "outstanding example" of the practical effect of legislative oversight of administrative rule-making involving the Public Service Commission and the "state's largest utility"). Seealso Op. Att'y. Gen. 82-132 at 8-9 (stating that it "matters not whether the . . . legislative entanglement be couched in terms of "approval" or "advice" and that "only the intrepid will refuse to follow the legislative "advice," knowing that future appropriations may well depend on whether the legislative "advice" is followed").
The Chaffin court also specifically concluded that "an unconstitutional encroachment may not always take the form of outright invasion," and that an executive authority "should be free, not only from blatant usurpation of its powers, but from paralyzing interference as well." Id. at 444. In my opinion, therefore, the fact that HB1018 does not, on its face, authorize a legislative approval or disapproval of agency rules will not insulate the Bill from a separation of powers challenge. Again, however, the practical effect of the bill, if enacted, will bear upon the question. Cf. Op. Att'y. Gen. 91-087 (whether proposed bill requiring Legislative Council review of executive travel expenditures is an impermissible encroachment of executive branch will depend upon its practical application, but delegation of power from entire General Assembly to Legislative Council in that regard was unconstitutional).
I am constrained to conclude in light of the foregoing recitation of law, that HB 1018 is constitutionally suspect.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] The Legislative Council is created at A.C.A. § 10-3-301 and is a "ad interim" committee of the General Assembly. Id. at subsection (a).
[2] You have inquired only about the Bill's adherence to the separation of powers doctrine and do not raise other constitutional objections that are sometimes asserted to challenge similar legislation, i.e. "presentment" requirements (requiring certain legislative actions to be presented to the Governor); "bicameralism" requirements (giving legislative power to only one house of the General Assembly); or unlawful delegation prohibitions (delegating legislative power to a committee or group less than the entire legislature). This opinion will therefore be restricted to a discussion of the separation of powers doctrine.
[3] The Arkansas Game and Fish Commission is an independent constitutionally created agency of state government. See Arkansas Constitution, Amendment 35. The act at issue in Chaffin was the appropriation act for the Game and Fish Commission. The court used language in its opinion, however, encompassing similar restrictions in the appropriation acts of "any state agency," or "an agency." It is clear, in my opinion, that this portion of the Chaffin decision did not turn upon the fact that the Game and Fish Commission was an independent constitutional agency.
[4] The court also cited a law review article on the subject with approval. See Powers, Separation of Powers: The Unconstitutionality of theArkansas Legislative Council, 36 Ark. L. Rev. 124 (1982). That article, in addition to discussing the unconstitutionality of "advice" on professional services contracts, also discusses the unconstitutionality of legislative review of administrative rules. The author concludes that the practice was at that time more than mere "advice," and not only encroached upon the executive branch of government, but the judicial branch as well, arguing that the power to determine the intention of an act passed by a previous General Assembly was judicial. See also, on this latter point,Legislative Research Commission v. Brown, supra.